## Frank S. Frost, Appellee, v. C. E. Heath, J. C. Follett, C. Heath, A. L. Whatman, A. Burns and M. Evans, as Underwriters at Lloyds, Appellants.

### Gen. No. 23,718.

1. AUTOMOBILES AND GARAGES, § 7*—*when identity of recovered stolen car shown.* Evidence in an action upon a theft insurance policy on an automobile, *held* sufficient to identify an automobile recovered and tendered to the insured as the stolen car.

2. ACCOUNT STATED, § 3*—*what does not constitute.* Where a theft insurance policy on an automobile gave the insurer 30 days after proof of loss in which to make payment, and before the expiration of the 30-day period the insurer and the insured adjusted the loss on the machine, the former drawing a draft for the amount and delivering it to the latter, but stopping payment on it the next day because of information that the stolen car had been found, the transaction did not amount to an account stated so as to permit of an independent action thereon.

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

Appeal from the Municipal Court of Chicago; the Hon. HOSEA W. WELLS, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1917. Reversed. Opinion filed June 19, 1918.

JOHN A. BLOOMINGSTON, for appellants.

JOSEPH C. PISHA, for appellee.

MR. PRESIDING JUSTICE TAYLOR delivered the opinion of the court.

This is an appeal from a verdict and judgment in favor of the plaintiff, Frank S. Frost, in the sum of $402.16.

Plaintiff's statement of claim filed November 11, 1915, recites that the defendants, on October 19, 1915, were indebted to the plaintiff in the sum of $372, "for money found to be due, from the defendant to the plaintiff, upon an account then and there stated between them." On December 24, 1917, the defendants filed an affidavit of merits in which they denied that there was an account stated or that there exists any indebtedness between them.

In September, 1914, one Ward bought a Ford roadster of the Ford Motor Company. The car number was 529,783 and the motor number, 561,658. Subsequently, in the early part of December, 1914, he traded that automobile in to the Overland Motor Company, as part of the price of a secondhand Overland automobile. In December, 1914, the plaintiff bought the Ford roadster bearing car number 529,783, and motor number 561,658, from the Overland Company. The Ford was a 1915 model. On December 17, 1914, the plaintiff took out a Lloyd's motor car insurance policy with the defendants. The policy provided for indemnity in case of theft, and was for $500 and expired on December 17, 1915. In August, 1915, the automobile was stolen from the plaintiff's premises at 1520 South Hamlin avenue. On October 19, 1915, proper proof of

loss was furnished to the defendants and—being 60 days after the time the automobile was stolen—the loss was appraised and adjusted at $372.50. The policy provides that the loss is payable "within thirty days after such loss is proved." On October 25, 1915, between 5:00 and 5:30 p. m., one Waibel, an insurance broker, representing the plaintiff, communicated with A. F. Shaw and Company, who represented the defendants, in regard to the payment of the loss, and, accordingly, A. F. Shaw and Company, representing the defendants, delivered to Waibel a draft for $372. On October 24th and on the morning of October 25, 1915, one Hedge made some inquiries of Waibel, the insurance broker who wrote the policy in controversy here, in regard to obtaining a reward for finding the rightful owner of the plaintiff's automobile, asking who it was that insured the automobile.

The draft reached the plaintiff on the morning of October 26, 1915. Meanwhile, however, on the ground that A. F. Shaw, the representative of the defendant company had received information through Hedge that the automobile in question had been found, the payment of the draft was stopped. Subsequently, the plaintiff, De Forest, R. R. Shaw and A. F. Shaw, the latter being the president of A. F. Shaw and Company, agent for the defendants, went over to the City Garage and examined the automobile which it was claimed was the plaintiff's automobile. The evidence showed that the car which Ward bought originally, and which was subsequently purchased by the plaintiff, was a Model T runabout, the original price of which was $448.85; that the body number was 134,366, the factory number, 561,658 and the engine number, 529,783. When the automobile in the City Garage was examined it was found that the regular engine number had been erased and in its stead there was stamped "358,027." The evidence shows that De Forest, a police officer, having received some information from Hedge, went

with the latter to 3215 Grenshaw street and took an automobile—being the one examined in the City Garage—from one Mathews who, when asked where he got the automobile, gave a number on Jackson boulevard which was a vacant lot. De Forest turned over the automobile to the city custodian. The factory plate had been taken off and the original engine number, also, and the other number "358,027" put on by means of a die that was not a regular Ford die. The body number was 134,366, and that was the number used by the police officer to determine the ownership of the car. The original engine number 561,658 and the car number 529,783 were the ones that belonged to the body number 134,366. The body number is under the seat where the gas tank is located and is on a metal plate. At the time of the examination of the automobile in the City Garage, the evidence of A. F. Shaw is to the effect that Frost said, when asked if he was not satisfied that it was his car, that he was not prepared to say that it was or that it was not; that he further said that he had ordered a car and did not want two, and asked why the company did not take the car and give him the money. The witness, Ward, who originally bought the automobile and then turned it in to the Overland Company, testified that the automobile had Hartford shock absorbers; that when he originally bought the car there were no accessories; that he put the electric lights in front, taking off the Ford lights and replaced the Ford side lights with the electric lights, and put on four Hartford shock absorbers, and the battery in the light battery box on the left side; that he had celluloid side curtains put on by the American Auto Top Company; that he went over to the City Garage and examined the automobile in question and found the metal battery box in the same location as he originally had it, and, also, the Hartford shock absorbers all in place; that he found a switch button in front about where he located the

electric switch button; that a padlock on the tin receptacle on the back which he originally put on was gone but that the holes were there; that the things he added to the car were practically as he put them on. When asked whether he was sure that the car was one that he formerly had he answered that he "would not be absolutely positive." The adjustment which was made on October 19, 1915, as to the value of the property lost, was as follows: "Cost of car with top, $375.00; Electric head lights, $4.75; Electric tail light $1.50; Electric dash lights, $1.50; Electric horn, $4.50; Hartford Shock Absorbers, $20.00; Vesta Battery, $18.23; Weed chains, $3.75; 2-30x3 inner tubes, $5.00; 2-30x3½ inner tubes, $6.00; 4-Extra Spark Plugs, $2.00; 2-Extra Fan Belts, $0.60; 1-Steel Floor Mat, $2.50; Speedometer, $10.00; Total cost of car and accessories, $455.33. Depreciation, $82.83; Net Loss, $372.50."

The trial judge instructed the jury "that when two parties have a settlement and adjust their accounts and agree upon the balance due, neither party can afterwards open the settlement, without first showing that there was fraud practiced on him, or a mistake made, and the burden of proof is upon the party wishing to open the settlement, to show by preponderance of evidence that there was a fraud practiced upon him, or that the party complaining was laboring under a mistake in relation to some matter of fact existing at the time, which entered into or affected the settlement. So that if you believe from the evidence that, at the time the settlement in question was agreed upon, the settlement was fairly and honestly entered into, and that the plaintiff was not guilty of any fraud in procuring such agreement for such settlement, then the settlement is binding upon the parties, and the plaintiff would be entitled to recover the amount agreed upon with interest on such sum at the rate of 5 per cent. per annum from the date of such settlement up

to date. On the contrary if you believe from the evidence that at or before the time of the making of such agreement for settlement, the plaintiff was guilty of any fraud, that induced the defendant to enter into such an agreement, you should find the issues in favor of the defendant. As stated the burden is on the defendant to prove by a preponderance of the evidence that there was fraud or mistake in the procuring of the agreement for settlement, and unless you find that the evidence preponderates in favor of the defendant, upon that issue you should find the issues in favor of the plaintiff.''

The only basis for recovery, alleged in the statement of claim, is upon an account stated. We are of the opinion that the evidence as to the identification of the automobile, the body number and other *indicia*, prove sufficiently that it was the particular machine covered by the policy in question, and that it was found at the time the draft was stopped. The sole question then remaining is whether adjusting the amount of the loss and the giving of the draft constitute, under the circumstances, such an account stated as would give rise to a new obligation upon which suit might be brought. Although the adjustment and giving the draft seem to suggest an account stated, we are bound to consider that what was done by the parties, they did having in mind all the circumstances and the thing insured against. Theft and inability to recover, or discover the whereabouts of, the automobile was the particular subject-matter of the contract of indemnity. The policy provided that the insurers would make good to the assured all loss, ''within thirty days after such loss is proved,'' etc. The proof of loss was made on October 19, 1915, so that the defendants had until November 18, 1915, to make payment. The draft was given on October 25, 1915, and was stopped on October 26, 1915, before it was presented for payment.

As the defendants had until November 18, 1915, in

which to pay the amount of the seemingly probable loss, and that time had not expired when the car was found, and the adjustment of the amount of the probable loss was merely an amicable determination of the value of the automobile, with certain accessories, we are of the opinion that the mere giving of the draft, under those circumstances, and before the expiration of the 30 days after proof of loss, bearing in mind the nature of the contract of indemnity and the subject-matter insured against and that the draft was stopped before payment, did not constitute such an account stated as to justify suit thereon. No rights of third persons intervened and the defendants had the right, when the automobile was found, being prior to the expiration of the 30 days, to stop payment of the draft. It stands to reason that if the stolen property is found before the defendants are in default of their liability to pay for it, they should not be bound unless some new binding contract has arisen between the parties. In the absence of evidence to the contrary, and as a practical matter, we must assume that the parties to the adjustment and the draft acted with the understanding that if the automobile was found before the draft was paid, the liability for indemnity then automatically ceased. On account of the errors pointed out, and as the suit is founded upon an account stated and not on the policy, the judgment will be reversed without remanding.

*Reversed.*